PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1265

PAUL A. SARTIN, Independent Executor of the Estate of Peter
A.T. Sartin,

                   Plaintiff - Appellant,

          and

PETER A.T. SARTIN,

                   Plaintiff,

          v.

MCNAIR LAW FIRM PA,

                   Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.  Joseph F. Anderson, Jr., District
Judge.  (3:12-cv-00895-JFA)

Argued:  May 13, 2014                    Decided:  June 23, 2014

Before NIEMEYER, GREGORY, and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the
opinion, in which Judge Gregory and Judge Floyd joined.

**ARGUED**:  Ronald L. Richter, Jr., BLAND RICHTER, LLP, Charleston,
South Carolina, for Appellant.  Robert E. Stepp, SOWELL GRAY
STEPP & LAFFITTE, LLC, Columbia, South Carolina, for Appellee.
**ON BRIEF**:  Eric S. Bland, BLAND RICHTER, LLP, Columbia, South
Carolina, for Appellant.  William H. Jordan, SOWELL GRAY STEPP &

LAFFITTE, LLC, Columbia, South Carolina, for Appellee.

NIEMEYER, Circuit Judge:

In a complex procedural context, we are called to construe the proper scope of Federal Rule of Civil Procedure 60(a), which authorizes district courts to correct mistakes found in judgments and orders.

Employing that Rule, the South Carolina District Court revisited two sanctions orders it had entered against "the Plaintiffs" in a private civil action more than a year earlier, indicating that it had originally intended the sanctions to apply to the plaintiffs' attorney, Peter A.T. Sartin, individually. Accordingly, it entered a Rule 60(a) clarifying order dated December 4, 2009, imposing the sanctions on Sartin. Sartin hired McNair Law Firm PA ("the McNair Firm") to represent him in South Carolina and to appeal the district court's clarifying order, but the McNair Firm filed the notice of appeal two days late. The appeal was thereafter voluntarily abandoned.

Sartin commenced this malpractice action against the McNair Firm based on the late filing, and the district court (through a district judge different from the one who presided over the earlier action) granted the Firm's motion for summary judgment. The court concluded that Sartin suffered no injury because of the late notice of appeal, inasmuch as the district court in the earlier action properly employed Rule 60(a) to clarify its sanctions orders and, therefore, Sartin would not have succeeded

3

on his appeal of that order, even had the notice of appeal been timely filed.

We agree and accordingly affirm.

I

In August 2006, California attorney Peter Sartin filed a complaint in the District of South Carolina on behalf of Travelers Insurance Company, as subrogee of Commercial Metals Company ("CMC"), and CMC, for its uninsured losses, against Tamini Transformatori, SRL, and Southwest Electric Company, demanding $17.7 million in damages arising from the failure of a transformer in a CMC facility in South Carolina. During the course of that litigation, Sartin noticed depositions for 14 Tamini witnesses in Milan, Italy. After deposing two, however, Sartin unilaterally cancelled the remainder and left Milan.

Claiming that Sartin's actions during the course of the two depositions and his abandonment of the remainder amounted to abusive and sanctionable conduct, Tamini filed a motion requesting that the court impose sanctions against "the Plaintiffs," pursuant to Federal Rules of Civil Procedure 26(c) and 37(a). At the conclusion of the hearing on the motion, the court sharply rebuked Sartin for his behavior:

> I thought the conduct of Mr. Sartin was totally inappropriate. And it was an egregious violation of any type of discovery and I do feel that sanctions are appropriate with regard to that.

4

> \* \* \*

> And with regard to improperly limiting or terminating
> depositions, I find that that is a serious, serious
> issue.  And after reviewing the video depositions that
> were provided to the court and reviewing those, those
> were very, very disturbing to me, because they appear
> to be one of the most blatant cases of abuse of
> depositions I have ever seen, and that kind of
> behavior will not be tolerated in this district.

> I don't know what they do in Mr. Sartin's district,
> but we don't do that out here.  You do not instruct
> witnesses how to answer questions, you do not coach
> witnesses, you do not arbitrarily just get up and
> leave a deposition.  That is totally inappropriate and
> I think deserving of sanctions.

In the written order granting sanctions, dated October 17, 2007, the court stated that it found "sanctions to be appropriate with respect to what it consider[ed] to be egregious discovery abuse by Plaintiffs."  In addition to imposing orders limiting plaintiffs' discovery, the court ordered "Plaintiffs" to pay Tamini's "costs, expenses, and attorneys' fees," in amounts to be determined after further submissions.

Following the issuance of the October 17, 2007 sanctions order, Travelers and CMC retained the firm of Nelson Mullins Riley & Scarborough LLP, in lieu of Sartin, to assume responsibility for the presentation of their case to the court.

After receiving Tamini's submissions on its costs, expenses, and attorneys' fees, which exceeded $1 million, the district court conducted a hearing on April 25, 2008, and

5

concluded that "an appropriate sanction to compensate Tamini and sanction the Plaintiffs for the numerous events that took place culminating with the trip to Milan, Italy . . . is $750,000." The court rejected as a sanction Tamini's motion to dismiss the case. The court also ordered the plaintiffs to pay attorneys' fees and expenses in the amount of $201,881.72 incurred in seeking to reopen or to re-depose the plaintiffs' witnesses as a result of the abuses in Italy.

Through their new counsel, Travelers and CMC filed a motion to clarify, modify, and amend the sanctions orders pursuant to Federal Rule of Civil Procedure 54(b), noting that the district court had "assessed such sanctions solely against the Plaintiffs without considering whether . . . such sanctions should more properly be assessed instead against the Plaintiffs' former counsel, Peter A. T. Sartin." The motion requested that the court defer the payment of all sanctions until after the completion of trial on the merits so that an evidentiary hearing could be conducted for the purpose of allocating the sanctions among Sartin, Travelers, and CMC. Summarily and without explanation, the court denied the motion.

In October 2008, the parties settled the case, with the defendants paying Travelers and CMC $5.5 million. As part of the settlement, the parties waived the right to appeal the sanctions orders.

6

Sartin thereafter commenced an action against Travelers and CMC in Texas state court to recover his attorneys' fees. Travelers and CMC filed a counterclaim, seeking to hold Sartin responsible for both the sanctions and the $2 million in attorneys' fees they paid Nelson Mullins. In a summary judgment motion filed in the Texas action, Sartin alleged that Travelers and CMC "ha[d] no evidence to prove that any of the $951,881.72 in sanctions" assessed by the South Carolina District Court in the Tamini case "included any of the costs, expenses, and attorneys' fees submitted by Tamini pursuant to the Court's Order dated October 17, 2007, or, if so, which of those costs, expenses, or attorneys' fees were for which of the specific acts or failures to act by [Sartin] that allegedly were negligent."

To clarify the responsibility for sanctions, Travelers and CMC returned to the South Carolina District Court in September 2009 and filed a motion under Federal Rule of Civil Procedure 60(a) to have the court clarify its "intent in its [October 17, 2007, and April 25, 2008] sanctions rulings." Specifically, the motion "request[ed] clarification as to whether any portion of the sanctions that [the South Carolina] Court issued was a sanction for conduct that occurred after the Court's written order of October 17, 2007," when Nelson Mullins was representing the plaintiffs. Sartin hired the McNair Firm to represent him in opposing the motion of Travelers and CMC for clarification.

7

After conducting a hearing on the motion, the district court (through the same district judge who had entered the sanctions orders) acted pursuant to Federal Rule of Civil Procedure 60(a) and entered an order dated December 4, 2009, granting the motion of Travelers and CMC to clarify the original sanctions orders. The court found that "[a]ll conduct that led to the $951,881.72 sanction occurred prior to the October 17, 2007 order, while Sartin was counsel of record for Plaintiffs." The court further clarified that "[t]he entire monetary sanction was for Sartin's discovery abuses." Finally, the court stated that "[i]t was the court's intent that Sartin, individually, be assessed monetary sanctions based upon his conduct during the course of his representation." It therefore held that "Sartin, individually, should be assessed monetary sanctions in the amount of $951,881.72."

On behalf of Sartin, the McNair Firm appealed the district court's Rule 60(a) clarification order, but it filed the notice of appeal two days late. The Firm filed a motion requesting that the district court approve the late filing of the appeal, which the court denied. The Firm then filed a second appeal from the order denying its motion to file an out-of-time appeal and from the court's earlier Rule 60(a) clarification order. Although this court heard arguments on the two appeals, it never issued an opinion because Sartin, Travelers, and CMC settled the

8

Texas case with mutual releases, and Sartin instructed the McNair Firm to dismiss the two appeals taken with respect to the Rule 60(a) clarification order.

Sartin then commenced this action against the McNair Firm, alleging legal malpractice. He claimed that the McNair Firm's failure to file a timely notice of appeal in the earlier action was a proximate cause of his failure to recover attorneys' fees against Travelers and CMC in the Texas case. The district court (through a different district judge) granted the McNair Firm's motion for summary judgment by order dated December 5, 2012, holding that Sartin had suffered no injury as a result of the Firm's failure to file a timely appeal because "the Fourth Circuit would not have reversed [the district court's Rule 60(a)] Clarification Order" entered in the earlier case.

This appeal followed.[1]

II

The parties agree on the legal framework for this case. In order for Sartin to succeed on his legal malpractice claim, he must show that the McNair Firm's failure to timely appeal the Rule 60(a) clarification order in the earlier action caused his injury. See Argoe v. Three Rivers Behavioral Ctr. & Psychiatric

---

[1] Sartin died at the end of 2012, and the executor of his estate is prosecuting this appeal. For clarity, we continue to refer to the appellant as Sartin.

9

<u>Solutions</u>, 697 S.E.2d 551, 555 (S.C. 2010).  This requires showing that the McNair Firm's negligence was a "but for" cause of the injury.  See <u>Eadie v. Krause</u>, 671 S.E.2d 389, 393 (S.C. Ct. App. 2008) ("Proximate cause requires proof of causation in fact and legal cause.  Causation in fact is proved by establishing the plaintiff's injury would not have occurred 'but for' the defendant's negligence" (citation omitted)).  Accordingly, Sartin "must show [that he] most probably would have been successful in the underlying suit if [the McNair Firm] had not committed the alleged malpractice." <u>Summer v. Carpenter</u>, 492 S.E.2d 55, 58 (S.C. 1997).  The relevant question, therefore, is whether Sartin's original appeal to the Fourth Circuit from the Rule 60(a) clarification order would have been successful had the notice of appeal been timely filed.

Sartin contends that the district court's clarification order was not authorized by Rule 60(a) and therefore was erroneously entered.  He argues that Rule 60(a) has a "limited application" that only allows courts "to clarify <u>de</u> <u>minimis</u> clerical mistakes such as typographical errors, or to fill-in gaps in a judgment," and no clerical mistake was involved in the entry of the sanctions orders.  Thus, he argues, the district court exceeded the scope of its Rule 60(a) authority by imposing sanctions on him individually.  In addition, Sartin contends that "there [was] nothing remotely ambiguous or vague about [the

10

sanctions orders]" because they were issued exclusively against "Plaintiffs" and there was no indication that the court intended to sanction him. Accordingly, Sartin maintains that his appeal of the court's Rule 60(a) clarification order would have been successful had it been timely filed.

The McNair Firm argues, to the contrary, that the district court acted within its discretion in issuing the clarification order. It contends that "Rule 60(a) is broader than Sartin argues" in that it allows a court to clarify its earlier order to conform with its intent at the time it issued the order. In short, it claims that "the district court's original intent is controlling." Under this standard, it argues that "the uncontroverted evidence establishes that [the district court's] original intent in issuing [its] sanctions order was to sanction Sartin individually." Accordingly, the McNair Firm maintains that Sartin's appeal of the court's Rule 60(a) clarification order would not have been successful had the appeal been timely noticed.

The issue thus presented is whether Rule 60(a) is sufficiently broad to have authorized the district court in the earlier case to give effect to its original intent to impose sanctions on Sartin, individually, even though the change was not the correction of a clerical mistake.

11

Federal Rule of Civil Procedure 60(a) authorizes a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The Rule gives the district court discretionary authority, and a court of appeal's review is for abuse of discretion. See Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I, 275 F. App'x 199, 204 (4th Cir. 2008) (per curiam) (citing Kocher v. Dow Chem. Co., 132 F.3d 1225, 1229 (8th Cir. 1997)). Discretion, such as Rule 60(a) confers, may be abused "by an exercise that is flawed by erroneous factual or legal premises." James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993).

Clearly, Rule 60(a) allows, as Sartin notes, courts to perform mechanical adjustments to judgments, such as correcting transcription errors and miscalculations. In the same vein, the Rule is properly utilized "'to perform a completely ministerial task' (such as 'making a judgment more specific in the face of an original omission')." Caterpillar, 275 F. App'x at 204 (quoting Kosnoski v. Howley, 33 F.3d 376, 379 (4th Cir. 1994)). And we have cautioned that a court may not employ Rule 60(a) to reconsider a matter that has already been decided. As we explained:

> The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in

12

execution whereas the latter consist of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

Rhodes v. Hartford Fire Ins. Co., 548 F. App'x 857, 859-60 (4th Cir. 2013) (per curiam) (quoting In re Walter, 282 F.3d 434, 440 (6th Cir. 2002)); accord Rivera v. PNS Stores, Inc., 647 F.3d 188, 194 (5th Cir. 2011) ("Clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculation are within Rule 60(a)'s scope; missteps involving substantive legal reasoning are not" (emphasis added) (footnote omitted)).

But, contrary to Sartin's argument, Rule 60(a) is not confined just to fixing typographical and other clerical errors. The Rule's text also authorizes a court to correct "a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). Such a mistake occurs when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment. A "mistake arising from oversight or omission" also includes an unintended ambiguity that obfuscates the court's original intent. Rule 60(a) authorizes a district court to correct either such mistake to conform the text with its original intent. See Garamendi v. Henin, 683 F.3d 1069, 1079 (9th Cir. 2012) ("Rule 60(a) allows

13

for clarification and explanation, <u>consistent with the intent of the original judgment</u>, even in the absence of ambiguity, if necessary for enforcement" (emphasis added)); <u>Rivera</u>, 647 F.3d at 195 ("A district court's authority under Rule 60(a) is also limited to making corrections that are <u>consistent with the court's intent at the time it entered the judgment</u>" (emphasis added)); <u>Agro Dutch Indus. Ltd. v. United States</u>, 589 F.3d 1187, 1192 (Fed. Cir. 2009) ("Courts enjoy broad discretion to correct clerical errors in previously issued orders in order <u>to conform the record to the intentions of the court</u> and the parties" (emphasis added)); <u>Walter</u>, 282 F.3d at 441 ("[A] court properly acts under Rule 60(a) when it is necessary to 'correct mistakes or oversights that cause the judgment to fail <u>to reflect what was intended</u> at the time of trial'" (emphasis added) (quoting <u>Vaughter v. Eastern Air Lines, Inc.</u>, 817 F.2d 685, 689 (11th Cir. 1987))); <u>Burton v. Johnson</u>, 975 F.2d 690, 694 (10th Cir. 1992) ("A District Court is not limited under Rule 60(a) to the correction of clerical mistakes arising from oversight or omission. Rather, a district court may also invoke Rule 60(a) to resolve an ambiguity in its original order <u>to more clearly reflect its contemporaneous intent</u> and ensure that the court's purpose is fully implemented" (emphasis added)).

In sum, the scope of a court's authority under Rule 60(a) to make corrections to an order or judgment is circumscribed by

14

the court's intent when it issued the order or judgment. And the court's original intent "may be ascertained through consideration of contemporaneous documents, such as a memorandum opinion or transcript, and by the presiding judge's own subsequent statements regarding his intent." Rhodes, 548 F. App'x at 860; accord Rivera, 647 F.3d at 197 ("'[A] judge's own subsequent statements of his intent' are reliable evidence in the Rule 60(a) context" (alteration in original) (quoting In re Jee, 799 F.2d 532, 535 (9th Cir. 1986))).

Here, the district court's intent at the time it issued the sanctions orders was manifested both by what the court later stated about its intent and by contemporaneous documents. In the Rule 60(a) clarification order, the court stated, "It was the court's intent that Sartin, individually, be assessed monetary sanctions based upon his conduct during the course of his representation." The court's statement about its own intent is reliable evidence. See Rivera, 647 F.3d at 197.

And the contemporaneous evidence strongly supports the court's statement. During the hearing when the district court first considered whether to impose sanctions, the court focused entirely on the conduct of Sartin without suggesting any complicity or fault on the part of his clients. It stated, for example:

15

I thought the conduct of Mr. Sartin was totally inappropriate. And it was an egregious violation of any type of discovery and I do feel that sanctions are appropriate with regard to that.

*       *       *

I don't know what they do in Mr. Sartin's district, but we don't do that out here. You do not instruct witnesses how to answer questions, you do not coach witnesses, you do not arbitrarily just get up and leave a deposition. That is totally inappropriate and I think deserving of sanctions.

(Emphasis added). Moreover, the conduct that drew the court's ire -- Sartin's handling of discovery -- was not the type of conduct in which Sartin's clients would typically participate. Indeed, Sartin has pointed to no evidence in the record -- and we can find none -- suggesting that the court was concerned about any conduct of Sartin's clients. The contemporaneous evidence thus supports the court's later statement that it had always intended to sanction Sartin individually.[2] See Sanchez v.

---

[2] Indeed, during the hearing on the Rule 60(a) motion to clarify the sanctions orders, the district court repeatedly made this point, speaking for instance to Sartin's counsel:

Court:   Let me just ask you this question. In my October [17] order I made the statement that the conduct of Mr. Sartin [was] totally inappropriate, it was an egregious violation of any type of discovery and I did feel that sanctions [were] appropriate with regard to that, and specific reference to Mr. Sartin's conduct, and I was referencing the Italy depositions. What about that is not clear as to what my intent was?

16

<u>City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990) (holding that the district court had the authority to correct a prior judgment under Rule 60(a) since there was no reason in the record to doubt the district judge's statements of his prior intent).

To be sure, the text of the district court's sanctions orders imposed sanctions only on "Plaintiffs." But this mistake can perhaps be explained by the fact that Tamini's motion, which only requested sanctions against "Plaintiffs," frequently conflated Sartin and his clients. For example, the motion explained that "<u>Mr. Sartin</u> inexplicably left [Italy] without providing any notice to Tamini" but later complained that "<u>Plaintiffs</u> rendered [Tamini's preparation] an extraordinary waste of time and resources by inexplicably and without notice leaving Italy." (Emphasis added). In granting the sanctions motion, the court likewise focused on "Plaintiffs" generally. Nevertheless, the record indicates that the court's exclusive motivation for imposing sanctions was the personal conduct of Sartin himself in conducting discovery. Thus, notwithstanding the district court's use of the term "Plaintiffs" in its sanctions orders, we conclude that the court's later statement

---

Counsel for Sartin:    Nothing that I know of, Your
                       Honor.

17

that it had always intended to impose sanctions on the plaintiffs' attorney is supported by the record.

To hold otherwise, we note, would call into question the veracity of a declaration made by the district court about its own intent. In order to find the district court's explanation of its intent suspect, the contrary evidence would have to be especially clear. In the record before us, it is not.

At bottom, we conclude that the district court's original intent was to impose sanctions on Sartin individually and, therefore, that the court did not abuse its discretion in giving effect to that intent in its Rule 60(a) clarification order. Because we conclude that the district court in the earlier case properly employed Rule 60(a), we affirm the district court's conclusion in this case that the McNair Firm's failure to appeal the earlier Rule 60(a) clarification order caused Sartin no injury.

### III

Sartin's other arguments require less discussion.

First, he contends that the district court's issuance of its Rule 60(a) clarification order was improper because the matter had already been litigated pursuant to the earlier Rule 54(b) motion of Travelers and CMC to allocate sanctions, which the court summarily denied. Sartin argues that "Rule 60(a)

18

cannot be used to revisit a matter that has already been adjudicated." The district court's Rule 54(b) ruling, however, did not conclude, either explicitly or implicitly, that Sartin should not be liable for sanctions. The ruling itself contained no explanation. Moreover, its context and the record do not supply an explanation. We do note, however, that the Rule 54(b) motion requested not only an allocation of the sanctions but also a delay of payment to Tamini until after the trial on the merits of the case. The district court could simply have determined not to delay payments to Tamini while Sartin, Travelers, and CMC squabbled over allocation. As such, we cannot conclude that the court's Rule 54(b) ruling evinced an intent to spare Sartin from sanctions. We therefore reject Sartin's argument that the district court's denial of the Rule 54(b) motion barred the court from later issuing its Rule 60(a) clarification order.

Sartin also contends that the district court lacked jurisdiction to issue its Rule 60(a) clarification order because that litigation had been finally dismissed over a year before it issued the order. The case was dismissed on October 20, 2008, and the Rule 60(a) clarification order was issued on December 4, 2009. But Sartin properly concedes that "Rule 60(a) . . . has no time limit." See Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight

19

or omission whenever one is found in a judgment, order, or other part of the record" (emphasis added)); Scola v. Boat Frances, R., Inc., 618 F.2d 147, 152 (1st Cir. 1980) ("Under Rule 60(a) a clerical mistake in a judgment or other error arising from oversight or omission may be corrected by the court 'at any time'"). The Rule would lose much of its vitality if it were not available to correct mistakes in final judgments, and nothing in the language of the Rule suggests such a limitation. Courts have frequently issued Rule 60(a) clarifications after litigation has been finally concluded. See, e.g., Rivera, 647 F.3d at 191 (affirming a correction of summary judgment from "with prejudice" to "without prejudice"); United States v. Mansion House Ctr. North Redevelopment Co., 855 F.2d 524, 527 (8th Cir. 1988) (per curiam) (rejecting the argument that Rule 60(a) "was not intended to permit the reopening of a final judgment"); Jackson v. Jackson, 276 F.2d 501, 502-03 (D.C. Cir. 1960) (affirming an adjustment of child support five years after the original judgment). As such, we conclude that the district court had jurisdiction to enter its Rule 60(a) clarification order.

For the reasons given, we affirm the summary judgment of the district court.

AFFIRMED

20